[Crim. No. 2171. First Dist., Div. Two. July 21, 1941.]

THE PEOPLE, Respondent, v. HOMER VIVIAN, Appellant.

Raine Ewell for Appellant.

Earl Warren, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

STURTEVANT, J.—On August 14, 1940, a complaint was filed in the municipal court against defendant under the name of John Millington, charging him with forgery of a bank check in the sum of $12.50. Defendant was arrested in a department store and was taken to a police station; after the policemen had talked to him the defendant led them to

his apartment where they found a fifteen year old girl who had been living with defendant. On August 15, 1940, defendant was arraigned before the municipal court where he answered under his true name and entered a plea of guilty to the forgery charge. He was represented by the public defender. Defendant was brought before the superior court for pronouncement of judgment on August 19, 1940, at which time the public defender made a motion for probation; the matter was continued to September 12, 1940. On the latter date defendant's present attorney was substituted for the public defender; he moved to withdraw the motion for probation and the plea of guilty entered in the municipal court and to have defendant returned to the latter court for an examination on the merits of the case under a plea of not guilty. The motions were based on the ground defendant was induced to plead guilty by the arresting officers who agreed that they would place no further charges against him and would see that his sentence would not exceed one year in jail. The defendant's motions were oral and were not supported by any affidavit or other evidence than the recitals contained in the documents sent up by the municipal court. On October 18, 1940, the court denied defendant's motions and entered a judgment sentencing him to Folsom Penitentiary for the period of time prescribed by law. On October 29, 1940, without first obtaining permission to renew his applications (Code Civ. Proc., sec. 1008), defendant presented a written motion for a writ of error *coram nobis,* a motion to set aside the motion for probation, a motion to withdraw the plea of guilty, and a motion to set aside the judgment and sentence entered on October 18, 1940. Each motion was denied. The defendant did not offer any affidavit or any other evidence in support of his applications made on October 29, 1940. However, on November 2, 1940, Raine Ewell executed a purported affidavit and filed the same in said court. Nevertheless the record does not show that said purported affidavit was ever called to the attention of the trial court.

On October 18, 1940, the trial court in open court made the following orders: (1) Denying the application for a writ of *coram nobis;* (2) denying the application to set aside the plea of guilty; (3) denying the motion for an order to set aside the judgment and sentence entered on October 18, 1940;

(4) denying the motion to withdraw the plea for probation; and (5) sentenced the defendant. Thereupon in open court counsel for the defendant orally appealed (1) from the judgment of the court; and (2) from the order denying the motion of the defendant to set aside the plea of guilty.

On October 29, 1940, the defendant made the same applications, the only difference being they were in writing. The court made the following orders: (1) Denying the application for a writ of error *coram nobis;* (2) denying the application for a motion to set aside the plea of guilty; and (3) denying the motion for an order to set aside the judgment and sentence made on October 18, 1940. Thereupon, in open court, counsel for the defendant appealed from the order of the court denying each application of the defendant. The application made on October 29, 1940, was but a repetition of the application made on October 18, 1940. It differed in no respect except that it was in writing. In the trial court the defendant's attorney admitted such was the case and the trial court so held. In *People* v. *Brattingham,* 91 Cal. App. 527 [267 Pac. 120], at page 528, the court said: "Appellant contends that an appeal is authorized by subdivision 3 of section 1237 of the Penal Code, which provides that an appeal may be taken from an order after judgment affecting the substantial rights of the defendant. It is also said that the court has inherent power at any time to vacate a void judgment. Generally this is true, but the rule is well established that an order made after judgment is not appealable where the motion merely asks the court to repeat or overrule the former ruling on the same facts." See also *People* v. *Simms,* 41 Cal. App. (2d) 466, 469 [107 Pac. (2d) 86]. It follows that the appeals last discussed should be and they are dismissed.

As to the orders made October 18, 1940, the appeal from the judgment appears to be regular. The other orders were not appealable. (*People* v. *Superior Court,* 4 Cal. (2d) 136, 149 [47 Pac. (2d) 724]; *People* v. *Morgan,* 9 Cal. App. (2d) 612, 617 [50 Pac. (2d) 1061].) Each of the purported appeals, taken on October 18, 1940, except the appeal from the judgment, is dismissed.

We come now to a consideration of the appeal from the judgment. The defendant claims he was entitled to apply for a writ of error *coram nobis.* (*People* v. *Campos,* 3 Cal.

(2d) 15 [43 Pac. (2d) 274].) The case is not in point. Campos was charged with the crime of murder. He entered a plea of guilty and judgment was pronounced against him. After judgment had been pronounced he applied for a writ of error *coram nobis*. In the instant case the application of this defendant was made before judgment was pronounced. The right to apply for such a writ does not obtain under such facts. (16 C. J. 1326; *Sanders* v. *State,* 85 Ind. 318 [44 Am. Rep. 29, 37].)

 The defendant claims his plea of guilty was obtained by duress. The record contains no evidence whatever of duress. (Civ. Code, sec. 1569.) Specifically he contends that he was induced to plead guilty by the arresting officers who promised that if he did plead guilty they would see that his sentence would not exceed one year in jail. To sustain that contention the defendant offered no evidence whatever. However, the district attorney called as a witness Maurice Reardon, a lieutenant in the police department. Thereupon substantially the following proceedings were had:

"Mr. Garry: (Deputy District Attorney) Mr. Ewell's contention is that at the time of the plea of the defendant in the municipal court . . . that Lieutenant Reardon told this defendant that he had better plead guilty, and that he would get no more than six months by the Judge in the county jail. The Witness: I never told him any such thing. I participated in the original arrest of this defendant. Defendant was arrested in the City of Paris for passing a bad check. Four officers participated. A traffic officer and two men, I think, came up from the bureau. They brought him (the defendant) to Room 407, my office. That was the last time we talked to him. That was the same day of the arrest, not in court or anything else. . . . This boy passed some checks on several department stores in San Francisco, and he got some property on the checks. When we got up there I said to him, 'You might as well come clean and we will give you some kind of a break.' He said he had done two jolts before in the penitentiary; he wanted to come clean; he did not want to go to the big house if he could help it; out in his room there was some stuff that he had, and he had had some more stuff which he gave to another party. We went out that night and got the stuff. There was this girl in his room. Afterwards when I found out that he was mixed up with

a fifteen year old girl, living there with her, I wiped my hands out of the picture. . . . I told him up there that night we don't try to hang anybody in court on checks; because we know it is a collection agency, they are not fooling me. Everybody just wants their dough. When prisoners come up we get them for one or two checks. So if they come and tell us we try to go along with them. If they will make restitution, we try to help them; because they have been in jail. I told him that. But when I found out he was living with a fifteen year old girl (not his wife), naturally I am not going to the bat for a guy like that. We wanted to play ball with him. They got the most of the property back. . . . Mr. Ewell: Let me say this. These officers knew all that at the time they talked to him and said they would help him out and get him a year in the county jail. Mr. Reardon: We brought the guy in. He told me he had been in one place, Leavenworth, and I wanted to help him out. I want to help him now. I don't go back on my word. Why are you saying that I knew he had a record like that? I did not know no such thing.''

By denying the defendant's motions the trial court held in effect that no fraud had been perpetrated on the defendant. We may not say the court erred. Conceding that Lieutenant Reardon, at the beginning of his interviews with the defendant, may have made a tentative promise, the facts do not show he did not keep it. Nor do the facts show the defendant acted or relied on the promise. Nor do the facts show the promise was false in any respect.

The defendant contends the complaint filed in the municipal court did not state facts sufficient to state a public offense. He makes no showing as to what material fact was not stated. He cites no authority sustaining his contention, and we find no merit in it. (*People* v. *Peterson,* 17 Cal. App. 734 [121 Pac. 703].)

He also contends the record in the municipal court did not show he entered a plea. There are two answers. The first one is that throughout these proceedings he has earnestly contended that he should be allowed to withdraw his plea of guilty entered in the municipal court. That fact contradicts his present contention. Furthermore, the municipal court sent up to the superior court a certified copy of the record. On its face it shows the plea was entered.

Finally, defendant contends there was error in convicting him on a complaint charging that John Millington committed the offense. But that is not all of the record. The complaint charged the offense "was committed by John Millington (whose real name is unknown to this complainant) . . . " When the defendant was arraigned he stated his true name was Homer Vivian. Thereafter all proceedings were conducted under that name. Such procedure was in compliance with the provisions of Penal Code, secs. 989 and 953.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing was denied August 5, 1941, and appellant's petition for a hearing by the Supreme Court was denied August 18, 1941.